**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CA 07 313ML

| | | |
|---|---|---|
| LORUSSO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>RICHMOND SAND AND GRAVEL, INC., RICHMOND HOLDING CORPORATION, and PETER CALCAGNI,<br><br>Defendants. | ) | C.A. No. 07 - ______ |

**VERIFIED COMPLAINT**

This is an action seeking injunctive relief to compel the Defendants to honor their binding obligations under a letter of intent, executed on April 27, 2007, between Plaintiff Lorusso Corporation ("Lorusso") and Defendant Richmond Sand and Gravel, Inc. ("Richmond Sand"). Pursuant to that April 27 letter of intent (the "LOI"), Richmond Sand and Richmond Holding Corporation ("Richmond Holding"), which are corporations owned and controlled by Peter Calcagni ("Calcagni"), are required to sell or lease certain real estate (the "Real Estate"), and Richmond Sand is required to sell certain equipment, rolling stock, and other assets (the "Assets"), all located in Richmond, Rhode Island to Lorusso or Lorusso's designee, provided Lorusso is satisfied with the results of its due diligence review.

Defendants have repeatedly failed to meet their obligations under the LOI by delaying or withholding delivery of due diligence materials, promising drafts of essential

agreements contemplated in the letter of intent and then not delivering those drafts, seeking to terminate the LOI without basis, and, more generally, frustrating the purpose of the LOI – the sale or lease of the Real Estate and Assets to Lorusso – by engaging in dilatory tactics. Lorusso, by contrast, stands ready, willing and able to proceed in accordance with the terms of the LOI to enter into a purchase and sale agreement, complete due diligence in the time period set forth in the LOI and, if satisfied with the due diligence results, complete the transactions described in the LOI.

Defendants' thinly-veiled attempts to derail the deal that they agreed to has harmed and continues to harm Lorusso. Accordingly, Lorusso seeks injunctive, compensatory and other relief from the Court.

## PARTIES

1. Plaintiff Lorusso is a Massachusetts corporation with a principal place of business at 3 Belcher Street, Plainville, Massachusetts.

2. Defendant Richmond Sand is a Rhode Island corporation with an address of 35 Stilson Road, Wyoming, Rhode Island.

3. Defendant Richmond Holding is a Rhode Island corporation with an address of 24 Martin Street, Cumberland, Rhode Island.

4. Defendant Calcagni is, on information and belief, a Rhode Island citizen who resides in Cumberland, Rhode Island, is the President of Richmond Sand and Richmond Holding, and owns or maintains a controlling interest in Richmond Sand and Richmond Holding.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because

the citizenship of the parties is diverse and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## FACTS

**Lorusso and Richmond Sand Enter Into a Binding Letter of Intent**

7. On April 27, 2007, Lorusso and Calcagni, on behalf of the Richmond Sand, executed the LOI that sets forth very specific terms and conditions for the sale or lease of the Real Estate and the sale of the Assets to Lorusso or its designee.

8. The LOI provides, in part, "[w]ithin ninety (90) days of the execution of this letter of intent, [Lorusso] and [Richmond Sand] will execute a Purchase & Sale Agreement pursuant to which [Lorusso] will acquire from [Richmond Sand] equipment and rolling stock" (the "P&S"). (Emphasis added.)

9. The LOI also requires that the P&S contain provisions mandating that Richmond Sand sell fee title to the Real Estate to Lorusso if Richmond Sand can obtain mortgage releases from its current mortgage holders, or else enter into a ground lease with Lorusso for the Real Estate (the "Ground Lease") consisting of (a) approximately 206 acres located on Stilson Road in Richmond, Rhode Island and all buildings and improvements located thereon, and (b) a 60-foot strip of land (the "Access Strip") that runs across a 27-acre parcel abutting the 206 acres, in order to provide access to Stilson Road.

10. At the time of the execution of the LOI, Calcagni and Richmond Sand indicated to Lorusso that Richmond Sand owned all of the Real Estate, including the Access Strip.

11. The LOI mandates that if Richmond Sand cannot deliver clear title to the Real Estate on the closing date, the parties will enter into the Ground Lease, which will contain a purchase option pursuant to which Lorusso would purchase the Real Estate and certain other assets owned by Richmond Sand, e.g., certain third party supply contracts, once Richmond Sand can obtain mortgage releases from its mortgage holders.

12. The terms of the purchases were "to be memorialized and documented in an agreement setting forth" certain terms and conditions specified in the LOI and any "other terms and conditions [] customary for a transaction of this nature."

13. Among those terms was a provision requiring the good faith cooperation of the parties in effecting the purpose of the LOI, i.e. the sale of the Real Estate and Assets.

14. Lorusso and Richmond Sand clearly intend the LOI to be a binding legal instrument, as evidenced by § 20 of the LOI, which provides:

> **Binding Nature.** The parties agree that this Letter of Intent shall constitute a binding legal obligation of the parties, enforceable in accordance with its terms. The parties agree to exercise good faith and diligence to negotiate, complete and execute final documentation.

15. In addition, pursuant to the terms of the LOI, Lorusso sent a $50,000 deposit to Defendants' counsel to be held in escrow.

16. The LOI also specifically prohibits Richmond Sand from soliciting or otherwise engaging in discussions with potential buyers other than Lorusso, in part because, as stated in § 6 of the LOI, "[Lorusso] expects to invest significant resources in connection with its due diligence and to achieve a Purchase and Sale Agreement and Ground Lease."

**Richmond Sand Fails to Honor Its Obligations Under The LOI**

17. At the time the LOI was signed, Defendants' counsel informed Lorusso's counsel that she would take on the responsibility to comply with the LOI by drafting the Ground Lease and P&S and would send drafts to Lorusso's counsel as soon as possible.

18. From May through early August 2007, counsel for Lorusso attempted on multiple occasions, unsuccessfully, to get Defendants to comply with their obligations under the LOI.

19. While awaiting the draft P&S and Ground Lease from Defendants' counsel, Lorusso's counsel, in an attempt to get an early start on due diligence (the LOI mandated a ninety (90) day due diligence period commencing upon the execution of the Purchase and Sale), sent an e-mail to Defendants' counsel attaching Lorusso's First Request for Information, which contained a detailed list of due diligence requests and questions for Richmond Sand.

20. In early May, after Richmond Sand signed the LOI, Lorusso's counsel reviewed the title insurance policy that Richmond Sand's counsel had provided and discovered that title to the Access Strip is held by Richmond Holding, not by Richmond Sand.

21. On information and belief, Calcagni and Richmond Sand knew or should have known that the Access Strip is owned by Richmond Holding and failed to disclose that fact to Lorusso prior to the execution of the LOI.

22. Lorusso relied on Calcagni and Richmond Sand's representation that all of the Real Estate was owned by Richmond Sand.

23. On May 3, 2007, Lorusso's counsel notified Richmond Sand's counsel of the need for Richmond Holding to enter into a document joining in the LOI for the Access Strip (the "Joinder").

24. Despite repeated requests, Calcagni never signed the Joinder.

25. In the middle of May 2007, Defendants' counsel sent an e-mail to Lorusso's counsel, copying Calcagni, stating that she had completed an initial draft of the P&S and was working on the Ground Lease. She also acknowledged her obligation to provide documents to Lorusso, stating that she "hope[d] to have responsive docs for you to send out by Monday."

26. After waiting a few days, it became clear that the due diligence documents and draft agreements were not forthcoming. Accordingly, Lorusso's counsel sent an e-mail to Defendants' counsel demanding that the Defendants fulfill their obligations and promises. Counsel urged that "the flow of due diligence needs to get going [and] we need a draft P&S based on the April 30 letter of intent."

27. After receiving no reply, Lorusso's counsel again implored Defendants' counsel to have the Defendants comply with their obligations. On June 19, 2007, Lorusso's counsel e-mailed Defendants' counsel stressing that the draft P&S was "really long overdue at this point and we need to get moving on it."

28. By mid-July 2007, Defendants' counsel still had failed to produce the draft P&S despite promises back in May that she was working on the document.

29. In order to head off the expiration of the 90-day period set for execution of a P&S, counsel for Lorusso sent multiple e-mails to defense counsel exhorting her to make good on her promise to send him the draft P&S and Ground Lease documents.

Lorusso's counsel also urged that the parties agree to an extension of the 90-day period within which such documents were to be executed so that the parties could discuss the draft P&S that Defendants' counsel had promised to provide.

30. Rather than providing timely, constructive responses to counsel's e-mails, Defendants' counsel engaged in a variety of dilatory tactics designed to avoid complying with the LOI. In some cases, Defendants' counsel did not respond at all. In other cases, counsel delayed her response by days, even though Lorusso's counsel made it abundantly clear that the 90-day period was drawing to a close. When counsel did respond to Lorusso's counsel's e-mails, she failed to provide direct responses to Lorusso's proposal to extend the 90-day period and further delayed providing the documentation that she had promised. And, almost immediately after the 90-day period expired, Defendants' counsel informed Lorusso's counsel that Richmond Sand considered the LOI to be terminated or expired.

**COUNT I**
**(Breach of the LOI)**

31. Plaintiff repeats the allegations made in paragraphs 1 through 30 of the Verified Complaint and incorporates them herein by reference.

32. The LOI is a valid and binding agreement.

33. Plaintiff has complied with all of the terms of the LOI.

34. Defendants have breached the LOI, including by:

(a) Promising to provide the Plaintiff with a draft P&S and failing to do so within the specified 90-day period;

(b) Precluding the Plaintiff from engaging in meaningful due diligence by refusing to turn over documents and other information without a legally recognized basis for such refusal;

(c) Failing to exercise good faith and diligence to negotiate, complete and execute the documentation necessary for the Asset sale and Real Estate lease or sale;

(d) Failing to cooperate with Plaintiff with respect to obtaining mortgage releases from its current mortgage holders; and

(e) Failing to have Richmond Holding join in the LOI.

35. Plaintiff is ready, willing and able to proceed in accordance with the terms of the LOI to enter into a purchase and sale agreement, conduct due diligence and, if satisfied with the due diligence results, purchase the Assets and lease or purchase the Real Estate.

36. Plaintiff has been harmed, and continues to be harmed, by the Defendants' acts and omissions in breaching the LOI.

**COUNT II**
**(<u>Breach of Duty of Good Faith and Fair Dealing</u>)**

37. Plaintiff repeats the allegations made in paragraphs 1 through 36 of the Verified Complaint and incorporates them herein by reference.

38. Section 20 of the LOI states that the "parties agree to exercise good faith and diligence to negotiate, complete and execute final documentation," thereby creating a mutual express duty of good faith and diligence.

39. The LOI is a binding contract that also carries with it an implied duty of good faith and fair dealing.

40. Defendants' refusal to comply with the terms of the LOI, despite numerous reminders and exhortations by Plaintiff's counsel, evidences bad faith.

41. As a result of the Defendants' breach, Plaintiff has sustained and continues to sustain substantial damages.

**COUNT III**
**(Permanent Injunctive Relief/Specific Performance)**

42. Plaintiff repeats the allegations made in paragraphs 1 through 41 of the Verified Complaint and incorporates them herein by reference.

43. Plaintiff and Defendants entered into a valid contract for Plaintiff to lease or purchase the Real Estate and Assets described in the LOI.

44. Defendants have refused to take the steps required under the LOI to complete the lease or sale of the Real Estate and the Assets.

45. Plaintiff seeks specific performance from Defendants to compel them to proceed in accordance with the terms of the LOI to enter into a purchase and sale agreement, facilitate Lorusso's due diligence, and, if Lorusso is satisfied with the due diligence results, sell or lease the Real Estate and Assets to Lorusso.

46. Without such permanent injunctive relief, Plaintiff will suffer irreparable harm for which Plaintiff lacks an adequate remedy at law.

**COUNT IV**
**(Declaratory Judgment)**

47. Plaintiff repeats the allegations made in paragraphs 1 through 46 of the Verified Complaint and incorporates them herein by reference.

48. Defendants are estopped from asserting that the LOI has expired or been terminated because it was Defendants' own actions and omissions that caused the 90-day period to pass without the execution of a P&S as contemplated by the LOI.

**COUNT V**
**(Misrepresentation Against Richmond Sand And Calcagni)**

49. Plaintiff repeats the allegations made in paragraph 1 through 48 of the Verified Complaint and incorporates them herein by reference.

50. At the time of the execution of the LOI, Richmond Sand and Calcagni knew or reasonably should have known that Richmond Holding owned the Access Strip.

51. Richmond Sand and Calcagni failed to disclose the true ownership of the Access Strip to Plaintiff.

52. Plaintiff reasonably relied on the representations by Calcagni and Richmond Sand concerning the Access Strip.

53. Calcagni's and Richmond Sand's material misrepresentations have caused direct and proximate harm to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue permanent injunctive relief, in the form of specific performance, to compel Defendants to proceed in accordance with the terms of the LOI to enter into a purchase and sale agreement, facilitate Lorusso's due diligence, and, if Lorusso is satisfied with the due diligence results, sell or lease the Real Estate to Lorusso or one of its designees and sell the Assets to Lorusso or one of its designees;

2. Issue permanent injunctive relief to compel Defendant Peter Calcagni, on behalf of Richmond Holding Corporation, to execute and deliver the Joinder and to proceed in accordance with the terms of the LOI, enter into a purchase and sale agreement and, if Lorusso is satisfied with the due diligence results, sell or lease the Access Strip to Lorusso or one of its designees;

3. Issue a declaratory judgment that Defendants are estopped from asserting that the LOI has expired or been terminated because it was Defendants' own actions and omissions that caused the 90-day period to pass without the execution of a P&S as contemplated by the LOI;

4. Issue permanent injunctive relief to compel Defendants and their affiliates and shareholders and their respective officers, directors, employees, agents and representatives to proceed in accordance with the terms of the LOI by terminating all negotiations and other discussions with any other prospective purchaser and/or lessee and to refrain from soliciting, encouraging or initiating inquiries, offers or proposals from, or participating in any discussions or negotiations with any person, party or entity (other than Plaintiff) with respect to any proposed investment, acquisition (whether by merger, consolidation or otherwise), lease or business combination or purchase of all or any portion of the Real Estate and/or Assets.

5. Issue an award of compensatory and other appropriate damages resulting from Defendants' breaches of the LOI and misrepresentations;

6. Issue an award of Plaintiffs' attorneys' fees and costs incurred in connection with this action; and

7. Grant all further relief that the Court deems just and proper.

**Plaintiff demands a trial by jury on all counts so triable.**

LORUSSO CORPORATION

By its attorneys,

Robin L. Main

Robin L. Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (FAX)

#823207

## VERIFICATION

I, Gerard Lorusso, President of Lorusso Corporation, hereby certify, under the penalties of perjury: (a) that I have read the foregoing Verified Complaint; and (b) that the allegations contained in the Verified Complaint are true and accurate based upon my personal knowledge, except such allegations as are made upon information and belief, which allegations I believe to be true.

Gerard Lorusso

Subscribed and sworn to before me this 15th day of August, 2007.

Mary E Coogan
Notary Public

My Commission Expires 10-02-09

MARY E. COOGAN
NOTARY PUBLIC
COMMONWEALTH of MASSACHUSETTS
MY COMMISSION EXPIRES
OCTOBER 02, 2009



:ODMA\PCDOCS\PROVIDENCE\822245\2