**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LORUSSO CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHMOND SAND AND GRAVEL, INC., RICHMOND HOLDING CORPORATION, and PETER CALCAGNI,<br><br>*Defendants.* | : | Case Number: 07-313 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND REMOVAL OF THE *NOTICE OF LIS PENDENS***

***Introduction***

Defendants, Richmond Sand & Gravel, Inc., Richmond Holding Corporation, and Peter Calcagni, pursuant to Rule 56 of the Federal Rules of Civil Procedure, file this memorandum of law in support of their motion for summary judgment, requesting that this Honorable Court dismiss the Plaintiff's Complaint and remove the *Notice of lis pendens* as filed against the Defendants' property because the issues presented are legal in nature and there exists no genuine issues of material fact for this Honorable Court to discern. Specifically, the Plaintiff and Defendants have agreed upon terms and conditions of a purchase and same agreement for certain assets to be conveyed by the Defendants to the Plaintiff. The agreed upon purchase and sale agreement contains a condition precedent, which requires the parties to obtain a consent for the release of the subject assets from security liens; the release and/or consent is essential for the assets to be conveyed to the Plaintiff free and clear of all encumbrances.

In an attempt to satisfy the condition precedent, the Defendants have presented the proposed purchase and sale agreement to the secured creditors and the same have refused to provide a consent and/or release of the collateral, which comprises a portion of the assets to be conveyed to the Plaintiff. Given that the Defendants cannot satisfy the condition precedent, after making good faith efforts to do so, the Defendants are discharged from their duties and obligations under the purchase and sale agreement and the same is terminated as so provided therein.

## ***Defendants' Statement of Facts***

Defendant, Richmond Sand & Gravel, Inc. (hereinafter, "Richmond Sand & Gravel"), is a Rhode Island corporation having its principal place of business located at 35 Stilson Road, Wyoming, Rhode Island. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni attached hereto. Richmond Sand & Gravel is the owner of that certain real property located in Richmond, Rhode Island and more particularly laid out as Town of Richmond Assessor's Plat 4B, Lot 61. *See id.* Richmond Holding Corporation, (hereinafter, "Richmond Holding"), is a Rhode Island corporation having its principal place of business located at 24 Martin Street, Cumberland, Rhode Island and the majority shareholder of Richmond Sand & Gravel. *See id.* Defendant, Peter Calcagni (hereinafter, "Calcagni"), is the sole shareholder of Richmond Holding Corporation. *See id.* Richmond Holding is the owner of that certain real property located in Richmond, Rhode Island and more particularly laid out as Assessor's Plat 4B, Lot 61-1. *See* Exhibit A, attached hereto.

Lorusso Corporation is a Massachusetts corporation with a principal place of business at 3 Belcher Street, Plainville, Massachusetts. At all times material, Gerry Lorusso, the shareholder of Lorusso Corporation, was a primary party in the negotiations of a Letter of Intent as well as a

Purchase and Sale Agreement for the purchase of certain assets and real property owned by Richmond Holding and Richmond Sand & Gravel.

On or about April 30, 2007, Richmond Sand & Gravel and Lorusso Corporation entered into a letter of intent, (hereinafter, the "LOI"), which was later amended to include Richmond Holding. *See* Exhibit B, attached hereto a copy of the LOI; *see also* Exhibit A, attached hereto. The purpose of the LOI was to set forth the general outline and understanding of the proposed transaction for the purchase and conveyance of certain assets of Richmond Sand & Gravel and Richmond Holding by an entity or entities to be formed by Lorusso Corporation. *See* Exhibit B, attached hereto. Within ninety (90) days of the execution of the LOI, Richmond Sand & Gravel and Lorusso Corporation were to mutually consent to a purchase and sale agreement pursuant to which Lorusso Corporation would acquire certain assets and real property. *See* Exhibit B, attached hereto.

During the negotiations for the terms and conditions of the LOI and the purchase and sale agreement, Calcagni informed Gerry Lorusso that the assets, specifically the real estate, were encumbered by security agreements including a mortgage held by the mortgagee, Bank of America (hereinafter, the "Bank"), recorded at the Town of Richmond Land Evidence Records volume 214, page 362, *et seq*. *See* Exhibit C, attached hereto a copy of the Mortgage held by Bank of America. In addition to the mortgage held by Bank of America, a second position security lien in the form of a mortgage is held by the following: John Aiello, RS&G, Inc., ARS Real Estate Associates, RSG Land Associates, Aiello Realty, Inc., Stilson Realty Ventures and 138 Real Estate Ventures, (hereinafter, the mortgagees are collectively referred to as "Aiello"), also recorded at the Town of Richmond Land Evidence Records, volume 214. *See* Exhibit D, attached hereto a copy of the Aiello Mortgages recorded against the property.

The Lorusso Corporation, Gerry Lorusso and their legal counsel, Alan Gottlieb, were made fully aware of the fact the property and the assets to be conveyed were subject to security liens that would first need to be released prior to the conveyance of the property and the assets so as to provide the Buyer with assets free and clear of encumbrances, and therefore, this issue was specifically addressed in the LOI. *See* Exhibit A, attached hereto. The LOI specifically states that the transaction contemplated by and among Calcagni, Richmond Holding, Richmond Sand & Gravel, Lorusso Corporation and Gerry Lorusso would be subject to and conditioned upon obtaining the consent of all the mortgagees and the parties "in determining a strategy to approach and negotiate with Seller's creditors to enable the Seller to obtain clear title to the premises . . ." *See* Exhibit B, attached hereto at Paragraph 24.

Subsequent to the execution of the LOI, Richmond Sand & Gravel and Lorusso Corporation attempted to negotiate a purchase and sale agreement as proscribed by the LOI to transfer certain and specific assets of Richmond Sand & Gravel and Richmond Holding to Lorusso Corporation. *See* Exhibit A, attached hereto. Within ninety (90) days of the execution of the LOI, the parties failed to reach an agreement on the terms and conditions of a purchase and sale agreement as required by the LOI, nor could the parties reach an agreement in respect to an extension of the LOI. *See* Exhibit B, attached hereto at Paragraph 8.

On August 17, 2007, Lorusso Corporation filed this action requesting an injunction in the form of specific performance to compel the Defendants to proceed in accordance with the terms and conditions of the LOI. *See* Exhibit E, attached hereto a copy of the Plaintiff's complaint at page 10. More importantly, the complaint as filed by the Plaintiff requests that the Defendants be ordered to negotiate the terms and conditions of a purchase and sale agreement for the conveyance of the Defendants' assets. *See id.* In conjunction with the filing of the complaint,

the Lorusso Corporation recorded a *Notice of lis pendens* against the Defendants' property. *See* Exhibit F, attached hereto a copy of the recorded *Notice of lis pendens*. In an attempt to resolve the matter short of trial, the parties engaged in mediation proceedings with Magistrate Justice Robert Lovegreen. In doing so, the parties, after three and half months of negotiations, reached an acceptable and mutually agreeable purchase and sale agreement for the conveyance of certain assets including real estate (the "Agreement"). *See* Exhibit G, attached hereto a copy of the Agreement.

The Agreement consented to by the parties provided a clear and explicit condition precedent which states that the "Seller and Buyer agree and acknowledge that a condition precedent to the consummation of the transaction contemplated herein is the parties obtaining the necessary consents and/or satisfactory partial releases from the Bank [Bank of America] and Aiello." *See* Exhibit G, attached hereto at Section 7.3. The Agreement provided that "[i]n the event that the consent and/or release is not attainable, the Seller shall forthwith notify the Buyer in writing and all obligations, responsibilities and conditions hereunder shall terminate." *See id.* Moreover, at Section 9.25, the parties agreed to cooperate with each other in "determining a strategy to approach and negotiate with the Seller's creditors to enable the Seller to obtain clear title to the premises to allow completion of the purchase." *See* Exhibit G, attached hereto at Sections 7.3 & 9.25.

Importantly, during the negotiations, the parties agreed to alter the terms and conditions of the LOI and that the terms and conditions of the Agreement would supersede the LOI. *See* Exhibit A, attached hereto. Accordingly, the Agreement states that it "would supersede all prior negotiations and agreements, whether written or oral, between the parties hereto, including the previously signed letter of intent." *See* Exhibit G, attached hereto Section 9.3.

At all times material, Calcagni negotiated the terms and conditions of the purchase and sale agreement in good faith and used all diligent efforts to obtain the necessary consent and/or release from the Bank for the purpose of consummating the contemplated transaction. *See* Exhibit A, attached hereto. Concurrent with the Agreement, the parties drafted a Side Agreement, whereby the parties agreed that upon the Bank's consent to the proposed transaction, they would proceed with the Agreement. *See* Exhibit G, attached hereto the Side Agreement. Additionally, the parties per the Side Agreement acknowledged that they would approach the Bank jointly, "to obtain written approval from the Bank and Aiello approving and consenting to the P&S and APA including, without limitation, obtaining terms by which the Bank and Aiello will release the property and assets to be sold. . ." *See id.*

Accordingly, pursuant to the Side Agreement and the parties' intent, Calcagni sought to obtain a meeting with the Bank and its counsel along with Gerry Lorusso and his counsel for the purpose of explaining and presenting to the Bank the proposed transaction. *See* Exhibit H, attached hereto a copy of the correspondence submitted to Jonathan K. Bernstein, Esquire from Michael A. Kelly, Esquire. In response to the parties' request for a meeting with the Bank and its counsel, the Bank refused to meet with the parties. *See* Exhibit I, attached hereto a copy of an e-mail received from Jonathan K. Bernstein, Esquire to Michael A. Kelly, Esquire.

On January 7, 2008, legal counsel for the Bank submitted a correspondence which stated that the Bank would not consent to the transaction as proposed. *See* Exhibit J, attached hereto a copy of Jonathan K. Bernstein, Esquire's correspondence to Michael A. Kelly, Esquire dated January 7, 2008. On January 8, 2008, the Seller, pursuant to Section 7.3 of the Agreement, formally notified the Buyer of the Bank's refusal to consent to the proposed transaction. *See* Exhibit K, attached hereto a copy of Michael A. Kelly, Esquire's correspondence to Alan P.

Gottlieb, Esquire dated January 8, 2008. Thereafter, in another attempt to consummate the transaction, on January 16, 2008, the parties sought to determine if any particular provisions, conditions and terms of the Agreement could be altered, which would make the transaction acceptable to the Bank. On same date, the Bank informed counsel for the Defendants that there were no specific terms or conditions which would alter the Bank's determination. *See* Exhibit L, attached hereto a copy of an e-mail from Jonathan K. Bernstein, Esquire describing the Bank's position.

## ***Standard for Summary Judgment***

The award of summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Further, an issue is "genuine" if it the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under applicable law." *See National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ***Argument***

### 1. *The Agreement includes a condition precedent, the occurrence of which must materialize prior to the Defendants' performance of its obligations.*

In the negotiated agreement, the Plaintiff and Defendants included an express condition precedent, the occurrence of which must transpire and materialize prior to the Defendants' performance of its obligations and the Plaintiff's ability to accept the assets conveyed and transferred thereunder. *See* Exhibit G, the Agreement at Section 7.3. It is fundamental law that a condition precedent in a contract is an act of a party that must be performed or a certain event

that must happen before a contractual right accrues or a contractual duty arises. *See* 13 Williston on Contracts §38:7; *see also* Restatement (Second) Contracts, §224. In Rhode Island a condition precedent has been found where a promise is not to be performed except upon a condition or happening of a stated event. *See Rotelli v. Catanzaro*, 686 A.2d 91, 94-95 (R.I. 1996) (holding that a condition to performance was payment in full of the mortgage note).

In determining whether a contract includes a condition precedent, the clear and unambiguous language is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions. *See Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051, 1056 (R.I. 1989) (holding that whether language used in a contract creates a condition or a covenant is dependent on the intent to the parties, which must be determined from a fair and reasonable interpretation of the language used in light of the facts and circumstances); *Elias v. Youngken*, 473 A.2d 158, 163 (R.I. 1985) (stating that clear and unambiguous language set out in a contract is controlling and will govern the legal consequences of its provisions).

Rhode Island has adopted the general rule that where a condition precedent is not fulfilled, the contract or the obligations attached to the condition may not be enforced. *See* Restatement (Second) of Contracts, §225 (1981). *See generally, Scalfani v. Gemma, et al.*, 1993 WL 853861 *relying on Laurel Race Course, Inc. v. Regal Const. Co., Inc.*, 333 A.2d 319, 327 (Md. 1975) (holding that where a contractual duty is subject to a condition precedent, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused). Moreover, this general rule has been adopted in the neighboring jurisdiction of Massachusetts. *See Massachusetts Mun. Wholesale Electric Co. v, Danvers*, 577 N.E.2d 283, 288 (Mass. 1991) *relying on* Restatement (Second) of Contracts, §225 (1981) and 5 S. Williston, Contracts § 663 (3d ed. 1961 & Supp.1990); *see also Tilo Roofing Co. v. Pellerin*,

122 N.E.2d 460, 462 (Mass. 1954) (stating that if a condition is shown not to have been performed, there is no binding obligation); *Sands v. Ridefilm Corp., et al.*, 212 F.3d 657. 661-662 (C.A.1 Mass. 2000).

As applied to the case at bar, the clear and unambiguous language of the Agreement creates an express condition precedent which must materialize prior to the Defendants' obligations becoming binding. Specifically, Section 7.3 of the Agreement sets forth the condition precedent, it provides; "***Seller and Buyer agree and acknowledge that a condition precedent to the consummation of the transaction contemplated herein is the parties obtaining the necessary consents and/or satisfactory partial releases from the Bank and Aiello***." *See* Exhibit G, attached hereto (*emphasis added*). By the clear terms of the Agreement, therefore, the parties acknowledged the need to obtain the consent and/or release of the Bank and Aiello prior to binding themselves to their obligations under the Agreement and conveying the assets to the Plaintiff.

Moreover, the Plaintiff and Defendants negotiated a term into the Agreement in the event that the condition precedent was not fulfilled. Specifically, Section 7.3 provides that "***[i]n the event that the consent and/or release is not attainable, the Seller shall forthwith notify the Buyer in writing and all obligations, responsibilities and conditions hereunder shall terminate***." *See* Exhibit G, attached hereto (*emphasis added*). Accordingly, the negotiated Agreement contains an express condition precedent, the occurrence of which must materialize prior to proceeding with their obligations thereunder.

2. ***The condition precedent as identified in Section 7.3 of the Agreement has not materialized; therefore, the Defendants are not bound by their obligations thereunder; consequently, the Agreement has been terminated by its own terms.***

The Defendants are not bound to proceed with their obligations as defined in the Agreement, as the event anticipated by the parties and memorialized as a condition precedent in the Agreement has not, and **cannot be**, materialized. As discussed above, where a contractual duty is subject to a condition precedent, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused. *See Scalfani*, 1993 WL 853861 *3 *citing Laurel Race Course, Inc. v. Regal Const. Co., Inc.*, 333 A.2d 319 (Md. 1979); *see also Sands*, 212 F.3d at 657; *Satellite Broadcasting Cable, Inc., et al. v. Telefonica de Espana, et al.*, 807 F.Supp. 210 (D.P.R. 1992) (holding that an agreement subject to condition precedent is not a contract until such time as the condition was obtained).

Here, the Defendants' obligations under the Agreement must be discharged and the agreement determined null and void, because the condition precedent cannot be fulfilled. *See* Exhibit I, attached hereto; *see also* Exhibit J, attached hereto. Moreover, the parties' intent for the creation of a condition precedent is further evidenced by the Side Agreement, which states that the parties are to jointly seek the approval of the Bank and Aiello prior to the execution of the Agreement and its ultimate consummation. *See* Exhibit G, attached hereto a copy of the Side Agreement. Accordingly, the parties presented the proposed Agreement to the Bank for its consent and approval to permit a release of the secured liens collateralizing the assets to be conveyed. *See* Exhibit H, attached hereto. Moreover, in a showing of good faith, the parties sought to meet with the Bank to discuss the proposal. The Bank, however, refused to meet with the parties regarding the proposed Agreement. *See* Exhibit I, attached hereto. Further, on January 7, 2008, the Bank submitted correspondence to counsel for the Defendants indicating

that it would not consent to the transaction as proposed. *See* Exhibit J, attached hereto. The Bank's correspondence gave little reason as to its refusal other than that it was displeased that it was not being paid in full despite assurances from Calcagni that the remaining assets would sufficiently collateralize the outstanding debt. *See* Exhibits A and J, attached hereto. Simply put, the Bank did not feel comfortable with the transaction and seeks a complete pay-off of its balance, which cannot be obtained with this sale. *See* Exhibits J & K, attached hereto. Because the consent and approval of the Bank was an express condition precedent to the parties' obligations and an essential term of the Agreement, which cannot be satisfied, this Honorable Court must find as a matter of law that the parties' obligations under the same are discharged by operation of the Agreement's clear and unambiguous language.

***3. The Defendants have, at all times, attempted in good faith to satisfy the condition precedent.***

The Defendants have engaged, without dispute, in a course of conduct in good faith and good diligence, in an attempt to fulfill the condition precedent set forth in the Agreement. The presence of a condition precedent in a contract imposes on a party obligated to bring about the happening of the condition an implied duty of good faith. *See Bradford Dyeing Association, Inc. v. J. Strog Tech GMBH*, 765 A.2d 1226, 1237 (R.I. 2001). In Rhode Island, it has been determined that where parties contract and make performance conditional upon the happening of an occurrence of a particular matter, the contract imposes upon the party required to bring about the happening of that occurrence an implied promise to use good faith, diligence and best efforts to accomplish the happening of the event. *See Bradford Dyeing Association, Inc.*, 765 A.2d at 1237 (R.I. 2001); *see also 1800 Smith Street Associates, LP v. Gencarelli,* 888 A.2d 46, 56 (R.I. 2005) *citing United States v. Croft-Mullins Electric Co.*, 333 F.2d 772, 775 (5th Cir. 1964) ( stating that a contracting party impliedly obligated himself to cooperate in the performance of his

contract and the law will not permit him to take advantage of an obstacle to performance which he has created or which lies within his power to remove).

In the instant matter, ***the Agreement imposes upon both parties the obligation to satisfy and fulfill the condition precedent.*** Specifically, Section 9.25 of the Agreement provides that the parties agree to cooperate with one another in "determining a strategy to approach and negotiate with the Seller's creditors to enable the Seller to obtain clear title to the premises to allow completion of the purchase." *See* Exhibit G, attached hereto. The only "strategy" devised among the parties was set forth in the Side Agreement, where by the parties would jointly meet with the Bank to describe and explain the proposed transaction. *See id.* The Bank, however, refused the request for a meeting. S*ee* Exhibit I. To this end, the Defendants have made all reasonable efforts and have exercised good faith in attempting to obtain the consent of the Bank for the proposed transaction. *See* Exhibit A, attached hereto. The Defendants' good faith efforts are clearly evidenced by their negotiations with the Plaintiff over the course of three and a half months to arrive at a mutually acceptable Agreement, their eventual presentment of the Agreement to the Bank and their repeated requests to the Bank for a meeting concerning the same. *See id.* The cooperation and good faith exercised by the Defendants meet their obligations under the law to fulfill and effectuate the condition precedent in the Agreement. Accordingly, because the good faith efforts of the Defendants have not resulted in the fulfillment of the condition precedent required in the Agreement, the parties, pursuant to the Agreement, are relieved of their obligations; thus, rendering the Agreement terminated by its own clear and unambiguous terms.

### 4. *The Plaintiff's Complaint is moot.*

The Verified Complaint as filed by the Plaintiff has a specific request, namely, that the Defendants be ordered to negotiate the terms and conditions of a purchase and sale agreement in accordance with the LOI. *See* Exhibit E, attached hereto. In resolution of this matter through mediation with the Magistrate Justice, the parties fulfilled the remedy requested of the Plaintiff's complaint as the parties in good faith negotiated a purchase and sale agreement that superseded the terms of the LOI. *See* Exhibit G, attached hereto. In doing so, the parties mooted the Plaintiff's complaint, because at this junction there is a negotiated, agreed upon agreement with a condition precedent that cannot be fulfilled. Consequently, this Court cannot fashion a remedy to mandate the Defendants' satisfy a condition precedent that has been demonstrated to be infeasible pursuant to the Plaintiff's complaint. The Plaintiff's complaint, therefore, must be deemed moot and dismissed accordingly, as well as a discharge and removal of the *Notice of lis pendens.*

## ***Conclusion***

For the aforementioned reasons, the Defendants' motion for summary judgment must be granted and the *Notice of lis pendens* recorded against the Defendants' Property must be discharged and removed.

***[Remainder of Page Left Intentionally Blank]***

Respectfully submitted,
Defendants,

**RICHMOND SAND & GRAVEL, INC.,**
**RICHMOND HOLDING CORPORATION** ***and***
**PETER CALCAGNI**

By their Attorneys,

/S/ John O. Mancini
Michael A. Kelly, Esq. (#2116)
John O. Mancini, Esq. (#6061)
55 Pine Street, Suite 5000
Providence, RI 02903
Ph. (401) 490-7334
Fax (401) 490-7874
www.maklawfirm.com

Dated: January 24, 2008

## CERTIFICATION

I hereby certify that I caused a true and accurate copy of the within Memorandum of Law in Support of Summary Judgment to be sent electronically and hand delivered, on this 24th day of January, 2008 to Robin Main, Esq., Hinckley, Allen & Snyder LLP, 50 Kennedy Plaza, Providence, Rhode Island 02903.

/S/ John O. Mancini

\\kelly-law-pdc\mak-clients\Fleet Construction Co., Inc\Lorusso Litigation\Pleadings\Memo in support of summary judgment FINAL..doc