UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LORUSSO CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHMOND SAND AND GRAVEL, INC., RICHMOND HOLDING CORPORATION, and PETER CALCAGNI,<br><br>*Defendants.* | Case Number: 07-313 |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**NOW COME,** the Defendants, Richmond Sand & Gravel, Inc., Richmond Holding Corporation, and Peter Calcagni, (hereinafter, the "Defendants"), pursuant to Local Rule 56(a), and hereby submit their statement of undisputed facts.

**UNDISPUTED FACTS**

1. Defendant, Richmond Sand & Gravel, Inc. (hereinafter, "Richmond Sand & Gravel"), is a Rhode Island corporation having its principal place of business located at 35 Stilson Road, Wyoming, Rhode Island. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

2. Richmond Sand & Gravel is the owner of that certain real property located in Richmond, Rhode Island and more particularly laid out as Town of Richmond Assessor's Plat 4B, Lot 61. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

3. Richmond Holding Corporation, (hereinafter, "Richmond Holding"), is a Rhode Island corporation having its principal place of business located at 24 Martin Street, Cumberland, Rhode Island and the majority shareholder of Richmond Sand & Gravel. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

4. Calcagni is the sole shareholder of Richmond Holding. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

5. Lorusso Corporation is a Massachusetts corporation with a principal place of business at 3 Belcher Street, Plainville, Massachusetts.

6. At all times material, Gerry Lorusso, the shareholder of Lorusso Corporation, was a primary party in the negotiations of a Letter of Intent as well as a Purchase and Sale Agreement for the purchase of certain assets and real property owned by Richmond Holding and Richmond Sand & Gravel.

7. Richmond Holding is the owner of that certain real property located in Richmond, Rhode Island and more particularly laid out Assessor's Plat 4B, Lot 61-1. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

8. On or about April 30, 2007, Richmond Sand & Gravel and Lorusso Corporation entered into a letter of intent, (hereinafter, the "LOI"). *See* Exhibit B, a copy of the LOI attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

9. The purpose of the LOI was to set forth the general outline and understanding of the proposed transaction for the purchase and conveyance of certain assets of Richmond Sand & Gravel and Richmond Holding by an entity or entities to be formed by Lorusso Corporation. *See* Exhibit B, a copy of the LOI.

10. Within ninety (90) days of the execution of the LOI, the parties were to mutually consent to a purchase and sale agreement pursuant to which Lorusso Corporation would acquire certain assets and real property. *See* Exhibit B, a copy of the LOI.

11. Pursuant to the LOI, the executed purchase and sale agreement was subject to the approval of Richmond Sand & Gravel's mortgage holders, Bank of America (the "Bank") and certain other entities controlled by or owned by John Aiello ("Aiello"). *See* Exhibit B, a copy of the LOI.

12. During the negotiations for the terms and conditions of the LOI, Calcagni informed Gerry Lorusso that the assets, specifically the real estate, were encumbered by security agreements including a mortgage held by the mortgagee, the Bank. *See* Exhibit C, a copy of the Mortgage held by Bank of America attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

13. In addition to the mortgage held by Bank of America, a second position security lien in the form of a mortgage is held by the following: John Aiello, RS&G, Inc., ARS Real Estate Associates, RSG Land Associates, Aiello Realty, Inc., Stilson Realty Ventures and 138 Real Estate Ventures. *See* Exhibit D, a copy of the Aiello Mortgages recorded against the property as attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

14. The Lorusso Corporation, Gerry Lorusso and their legal counsel, Alan Gottlieb, were made fully aware of the fact the property and the assets to be conveyed were subject to security liens that would first need to be released prior to the conveyance of the property and the assets so as to provide the Buyer with assets free and clear of encumbrances, which is clearly evident in the LOI. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

15. The LOI specifically states that the transaction contemplated by and among Calcagni, Richmond Holding, Richmond Sand and Gravel, Lorusso Corporation and Gerry Lorusso would be subject to and conditioned upon obtaining the consent of all the mortgagees and the parties "in determining a strategy to approach and negotiate with Seller's creditors to enable the Seller to obtain clear title to the premises . . ." *See* Exhibit B, a copy of the LOI at Paragraph 24.

16. Subsequent to the execution of the LOI, Richmond Sand & Gravel and Lorusso Corporation attempted to negotiate a purchase and sale agreement as proscribed by the LOI to transfer certain and specific assets of Richmond Sand & Gravel and Richmond Holding to Lorusso Corporation. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

17. Within ninety (90) days of the execution of the LOI, the parties failed to reach an agreement on the terms and conditions of a purchase and sale agreement as required by the LOI, nor could the parties reach an agreement in respect to an extension of the LOI. *See* Exhibit B, a copy of the LOI at Paragraph 8.

19. On August 17, 2007, Lorusso Corporation filed this action with this Court requesting an injunction in the form of specific performance to compel the Defendants to proceed in accordance with the terms and conditions of the LOI. *See* Exhibit E, a copy of the Plaintiff's Complaint at 10. More importantly, the complaint as filed by the Plaintiff requests that the Defendants be ordered to negotiate the terms and conditions of a purchase and sale agreement for the conveyance of the Defendants' assets. *See id.*

20. In conjunction with the filing of the complaint, the Lorusso Corporation recorded a *Notice of lis pendens* against the Defendants' property. *See* Exhibit F, a copy of the Recorded *Notice of lis pendens*.

21. In an attempt to resolve the matter short of trial, the parties engaged in mediation proceedings with Magistrate Justice Robert Lovegreen. In doing so, the parties after three and half months of negotiations reached an acceptable and mutually agreeable purchase and sale agreement for the conveyance of certain assets including real estate (the "Agreement"). *See* Exhibit G, a copy of the Agreement attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

22. The Agreement consented to by the parties provided a clear and explicit condition precedent which states that the "Seller and Buyer agree and acknowledge that a condition precedent to the consummation of the transaction contemplated herein is the parties obtaining the necessary consents and/or satisfactory partial releases from the Bank [Bank of America] and Aiello." *See* Exhibit G, a copy of the Agreement at Section 7.3 attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

23. The Agreement provided that "[i]n the event that the consent and/or release is not attainable, the Seller shall forthwith notify the Buyer in writing and all obligations, responsibilities and conditions hereunder shall terminate." *See* Exhibit G, a copy of the Agreement at Sections 7.3 & 9.25 attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment. Moreover, at Section 9.25, the parties agreed to cooperate with each other in "determining a strategy to approach and negotiate with the Seller's creditors to enable the Seller to obtain clear title to the premises to allow completion of the purchase." *See id.*

24. Importantly, during the negotiations, the parties agreed to alter the terms and conditions of the LOI and that the terms and conditions of the Agreement would supersede the LOI. Accordingly, the Agreement states that it "would supersede all prior negotiations and

agreements, whether written or oral, between the parties hereto, including the previously signed letter of intent." *See* Exhibit G, a copy of the Agreement at Section 9.3 attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

25. At all times material, Calcagni negotiated the terms and conditions of the purchase and sale agreement in good faith and used all diligent efforts to obtain the necessary consent and/or release from the Bank for the purpose of consummating the contemplated transaction. *See* Exhibit A, a copy of the Affidavit of Peter Calcagni.

26. Concurrent with the Agreement, the parties drafted a Side Agreement, whereby the parties agreed that upon the Bank's consent to the proposed transaction, they would proceed with the Agreement. *See* Exhibit G, attached hereto the Side Agreement.

27. Additionally, the parties per the Side Agreement acknowledged that they would approach the Bank jointly, "to obtain written approval from the Bank and Aiello approving and consenting to the P&S and APA including, without limitation, obtaining terms by which the Bank and Aiello will release the property and assets to be sold. . ." *See id.*

28. Accordingly, pursuant to the Side Agreement and the parties' intent, Calcagni sought to obtain a meeting with the Bank and its counsel along with Gerry Lorusso and his counsel for the purpose of explaining and presenting to the Bank the proposed transaction. *See* Exhibit H, attached hereto a copy of the correspondence submitted to Jonathan K. Bernstein, Esquire from Michael A. Kelly, Esquire.

29. In response to the parties' request for meeting with the Bank and its counsel, the Bank refused to meet with the parties. *See* Exhibit I, a copy of an e-mail received from Jonathan K. Bernstein, Esquire to Michael A. Kelly, Esquire attached to the Memorandum of Law in Support of the Defendants' Motion for Summary Judgment.

30. On January 7, 2008, legal counsel for the Bank submitted a correspondence which stated that the Bank would not consent to the transaction as proposed. *See* Exhibit J, a copy of Jonathan K. Bernstein, Esquire's correspondence to Michael A. Kelly, Esquire dated January 7, 2008.

31. On January 8, 2008, the Seller, pursuant to Section 7.3 of the Agreement, formally notified the Buyer of the Bank's refusal to consent to the proposed transaction. *See* Exhibit K, a copy of Michael A. Kelly, Esquire's correspondence to Alan P. Gottlieb, Esquire dated January 8, 2008.

32. Thereafter, in another attempt to consummate the transaction, on January 16, 2008, the parties sought to determine if any particular provisions, conditions and terms of the Agreement could be altered, which would make the transaction acceptable to the Bank. On same date, the Bank informed counsel for the Defendants that there were no specific terms or conditions which would alter the Bank's determination. *See* Exhibit L, attached hereto a copy of an e-mail from Jonathan K. Bernstein, Esquire describing the Bank's position.

***[Remainder of Page Left Intentionally Blank]***

Respectfully submitted,

Defendants,

**RICHMOND SAND & GRAVEL, INC.,**
**RICHMOND HOLDING CORPORATION *and***
**PETER CALCAGNI**

By their Attorneys,

/S/ John O. Mancini
Michael A. Kelly, Esq. (#2116)
John O. Mancini, Esq. (#6061)
55 Pine Street, Suite 5000
Providence, RI 02903
Ph. (401) 490-7334
Fax (401) 490-7874
www.maklawfirm.com

Dated: January 24, 2007

## CERTIFICATION

I hereby certify that I caused a true and accurate copy of the within Statement of Undisputed Facts to be sent electronically, on this 24th day of January, 2008 to Robin Main, Esq., Hinckley, Allen & Snyder LLP, 50 Kennedy Plaza, Providence, Rhode Island 02903.

/S/ John O. Mancini